**IN THE COURT OF APPEALS OF IOWA**

No. 14-0659
Filed December 24, 2014

**IN THE INTEREST OF R.N.,**
**Minor Child,**

**S.N., Father,**
**Appellant,**

**S.Y., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

The mother and father separately appeal the juvenile court's termination of their parental rights to their daughter, R.N.  **AFFIRMED ON BOTH APPEALS.**

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant father.

Kate Strickler, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Michael K. Jacobsen, County Attorney, and Scott W. Nicholson, Assistant County Attorney, for appellee State.

Larry Pettigrew of Pettigrew Law Firm, P.C., Newton, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

The mother and father separately appeal the juvenile court's termination of their parental rights to their daughter, R.N. They both argue the State did not prove by clear and convincing evidence grounds to terminate their rights under Iowa Code section 232.116(1)(f) and (*l*) (2013), asserting R.N. will be able to be returned to their care within a reasonable period of time. Alternatively, the mother requests she be granted an additional six months to work towards reunification. They further argue termination was not in R.N.'s best interests and, due to the parent-child bond, Iowa Code section 232.116(3)(c) precludes termination.

We conclude the juvenile court properly terminated the mother's and father's parental rights pursuant to Iowa Code section 232.116(1)(f), given their persistent substance abuse issues and unwillingness to cooperate with the Department of Human Services (DHS). Additionally, the fact they have been involved in substance abuse treatment for many years and have neither consistently attended treatment nor made significant, lasting progress, indicates additional time will not serve to correct the situation. Furthermore, due to the father's physical abuse of R.N. and the mother, in addition to the mother's inability to overcome her twenty-year addiction, termination of their parental rights is in R.N.'s best interest, and the parent-child bond does not counsel against termination. Consequently, we affirm the order of the juvenile court.

**I. Factual and Procedural Background**

R.N., born March 2003, first came to the attention of DHS upon her birth, having tested positive for methamphetamine in her system. She was returned to

the parents' care following their cooperation with DHS. She again came to the attention of DHS on August 1, 2011, when authorities discovered a methamphetamine pipe in the home. Both parents admitted to using methamphetamine while caring for R.N., and the mother further admitted to using marijuana. R.N. was adjudicated a child in need of assistance (CINA) on September 9, 2011, pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2011),[1] but was allowed to remain in the home with the requirement the parents cooperate with services.

During a family team meeting on October 18, the mother admitted to using methamphetamine less than two weeks prior and opiates the day of the meeting. She agreed to move out of the home and allow the father to parent R.N. A disposition hearing was held on November 3, 2011, which neither parent attended. Due to the parents' missed drug screens in addition to a general lack of cooperation with services, R.N. was removed from the home. She was placed with her maternal aunt. On November 18, 2011, a removal hearing was held, and R.N. was allowed to return to the father's care under the supervision of DHS. Following the mother's completion of inpatient substance abuse treatment, R.N. was under both parents' care as of February 3, 2012.

The father tested positive for methamphetamine on April 9, 2012, despite reporting neither he nor the mother were drinking or using drugs. DHS required him to move out of the home in order for R.N. to remain, to which both parents

---

[1] The paragraphs under which R.N. was adjudicated CINA state the child shall be considered in need of assistance if the parent has physically abused or neglected the child (or is imminently likely to do so), the child is likely to suffer harm due to the parent's neglect in failing to supervise the child, and the child has not received adequate care due to the parent's drug abuse. Iowa Code § 232.2(6)(b), (c)(2), & (n).

ostensibly agreed. After DHS requested a mental health evaluation, treatment, and substance abuse treatment, the father sporadically attended services and attended a few supervised visits. The father did not contact DHS or the family safety, risk, and permanency service providers from June 2012 until January 2013. Pursuant to the father's testimony at the termination hearing, after a relapse on methamphetamine in April 2013, he successfully completed a residential treatment program and has been sober since June 2013.[2] He further testified he had been sober for longer periods of time, but that he had relapsed.

On June 29, 2012, R.N. reported to the police her father had slapped her and was threatening her. She further told the officer her father was staying in the home even though he was not allowed to be there. The police contacted the DHS caseworker, who informed the officer the father was only allowed supervised visitation, and R.N. was again removed from the home. However, R.N. was returned to the mother's care following a review hearing on July 13, 2012.

When DHS workers went to the home at various times between July and December 2012, the father was occasionally there, but because this was technically not a violation of DHS requirements, given R.N. was not present, R.N. remained in the home. The parents missed all requested drug screenings during this time, but on January 1, 2013, the DHS worker transported the mother to a drug screen, and she tested positive for methamphetamine. A removal notice was served at the home, and it was discovered the father was living there. R.N.

---

[2] The day before the termination hearing, the mother's sister left a message at DHS requesting both parents be drug tested because they had stolen her hydrocodone. No tests were entered into evidence.

stated she was told to lie about the father's presence in the home or she would "get a whooping." She further reported the parents would sleep for long periods of time and she would be responsible for feeding herself, but sometimes there was no food in the home. She was also responsible for getting herself to school because the parents would not wake up in time to help her. Consequently, R.N. was removed from the home and placed in foster care, where she remained at the time of the termination hearing.

The mother's history of substance abuse is significant. She has been using methamphetamine since 1993 and reports only minimal instances of sobriety. In her testimony at the termination hearing, she stated: "I've been sober for a year. I've been sober for six months this time . . . . [I]t's very sporadic." With regard to her treatment during the pendency of this case, she successfully completed inpatient treatment and was discharged in December 2011, with the recommendation she follow through with outpatient services. However, she was discharged unsuccessfully from services on March 26, 2012, given she only attended two appointments in the beginning of February. Following various relapses, she attempted to attend inpatient and outpatient treatment programs but never successfully completed a program. She last tested positive for illegal substances on October 10, 2013. At the termination hearing, she testified R.N. could not presently be returned to her care, and that she would need an additional six to eight months to work towards reunification.

The record also indicates the father physically abused both R.N. and the mother. A DHS worker's report, dated March 7, 2013, stated:

[R.N.] states that she is afraid of her dad but not right now at visits because someone is there to watch them. At visits right now he is being nice. She stated that if a worker was not there he would start to say things. She is more afraid of her dad when they are alone together. She states her dad does bad things to her, I asked if she could tell me what she means by bad things and she replied that he hurts me, slams me into things, yells at me, tells me to go die and tells me nobody cares about me. He has been doing this for a long time, even before DHS became involved. She was upset after her visit yesterday because her dad keeps lying and saying she will be home soon. She states that she has some text messages on her phone, she is sure one is from dad that is bad. When I asked about this she stated that she knows there is a message asking why she is telling us stuff. She states that at the visits her dad will tell her that he will give her $5 to come and sit on his lap. She is very afraid of what her dad will say or do to her when he finds out that she has told what has been going on in the home. I asked her about when she said her dad hurt her, what she meant by hurt, she stated that he will hit her in the arm and legs, push her into the corners of walls, and kick her.

R.N. further told DHS workers the father would break things like mirrors and punch holes in the wall, and that on occasion her mother would throw her. When asked if she felt safe in the home, she responded "sometimes she feels safe at home but not when she has to lie or when dad has a bad temper." With regard to the mother's abuse, R.N. reported to DHS workers that the father had hit the mother but she was instructed to lie about those incidents.[3] Additionally, on February 12, 2013, the father's adult daughter reported to DHS the father had abused her, he had not changed, and it was in R.N.'s best interest to be placed out of the father's care.

The following services were offered to the parents during the pendency of this proceeding: relative placement; supervised visitation; family safety, risk, and

---

[3] The mother reported to DHS the father "got into her face," but did not choke her, which refers to one instance of abuse in January 2013. However, on another occasion she stated the father had been domestically violent but that only happened "very rarely."

permanency services; family team meetings; substance abuse evaluations; inpatient and outpatient substance abuse treatment; drug screens; mental health services; and safety planning.

On January 13, 2014, the State filed a petition requesting the juvenile court terminate the parental rights of the mother and father. A contested hearing was held on March 6, 2014, in which two DHS workers, the mother, the father, and the foster mother testified. Pursuant to an order dated April 7, 2014, the juvenile court terminated the mother's and father's parental rights under Iowa Code section 232.116(1)(f) and (*l*) (2013). The mother and father separately appeal.

**II. Standard of Review**

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.* To terminate parental rights under Iowa Code section 232.116(1)(f), the State must prove by clear and convincing evidence the child is four years of age or older, she has been out of the home for twelve of the last eighteen months, and she cannot be returned to the parents' care at this time.

**III. Termination Pursuant to Iowa Code section 232.116(1)(f)**

The parents first argue the State did not prove by clear and convincing evidence their rights should be terminated under either section cited by the

juvenile court, that is, Iowa Code section 232.116(1)(f) and (*l*). Though the mother admitted at the termination hearing she could not care for R.N. at the present time, she asserts she will be able to care for R.N. given another six months in which she can work towards reunification. Concomitantly, the father argues R.N. can be returned to his care if he does not live with the mother, and therefore paragraph (f)'s requirement that the child cannot be returned to the parent's care at the present time has not been met.

We begin by noting the district court's careful observation of the framework of this case, before it made its ultimate findings:

> The overall history of this case is neither uncommon nor unusual for a drug-related case; with periods of sobriety followed by periods of relapse, and periods of compliance followed by periods of noncompliance. The Court is left to decide whether this is an inevitable cycle that cannot or will not change despite the parents' best efforts or whether the parents have finally succeeded in breaking that cycle.

Given this framework, we do not agree with the father's argument R.N. can be returned to his care at the present time. While, like the juvenile court, we commend the father for his period of sobriety, as evidenced from his past behavior it is clear he will not comply with DHS's requirement he not live with the mother. He was advised to leave the family residence during the initial few months of the case; however, he lied to DHS, informing the department he had moved, but then over the course of several months would hide in the basement during home visits. He also instructed R.N. to lie about his presence in the home, which she did on several occasions. Additionally, testimony at the hearing indicated he has been in a relationship with the mother for the past twelve years and has no desire to discontinue the relationship. In determining the future

actions of the parent, his past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). It is very likely, then, that despite his sobriety, the father would remain with the mother, who admitted she cannot presently care for R.N. due to her issues with substance abuse.

We also find particularly disturbing R.N.'s multiple statements the father physically abused her and the mother, in addition to the adult daughter's report to DHS the father abused her as well.[4] On our de novo review of the record, this evidence, combined with the father's unwillingness to cooperate consistently with DHS, demonstrates R.N. cannot be returned to his care.

We also conclude the State proved by clear and convincing evidence R.N. cannot be returned to the mother's care within a reasonable period of time. Though, again, we commend the mother for her period of sobriety, her continued use of methamphetamine since 1993, her multiple failed attempts at remaining sober, as well as her inability to act in the best interest of R.N., shows R.N. cannot be placed in the mother's care within a reasonable period of time. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting."). Consequently, we conclude the State proved by clear and convincing evidence the mother and father's parental rights should be terminated pursuant to paragraph (f).

---

[4] In the termination hearing the father admitted there was a founded child abuse report regarding his physical abuse of this daughter.

**IV. R.N.'s Best Interests and the Parent-Child Bond Consideration**

The parents further claim termination is not in R.N.'s best interest. They assert the parent-child bond consideration in Iowa Code section 232.116(3)(c) precludes termination.[5]

It is undisputed the parents share a bond with R.N. However, they have been receiving services—without substantially complying with those services—since August 2011. There have been repeated relapses following successful completion of inpatient and outpatient treatment, and the mother requests more time to address this issue. Though the father cites his continued sobriety, it is evident from his past behavior it is unlikely he will comply with any requirement he not live with the mother, who, it has been established, cannot care for R.N. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *N.F.*, 579 N.W.2d at 341; *see also* Iowa Code § 232.116(2). It is unfair to R.N. to prolong the instability in her life, particularly after the parents have been given services since August 2011 but still cannot provide an adequate home.

Furthermore, the physical abuse by the father, and the mother's complicity in this abuse, indicates termination of their parental rights is in R.N.'s best interest. We also find it reassuring that R.N. is thriving in her foster home, and the foster mother testified she would like to adopt R.N. Therefore, the parent-

---

[5] The State argues error was not preserved on this issue. Specifically, it asserts the juvenile court did not address paragraph three, the parents filed no motion to amend or enlarge, and therefore error was not preserved. However, the juvenile court must address all three paragraphs set forth in Iowa Code section 232.116 when determining whether parental rights should be terminated, and we review those findings de novo. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Consequently, we will address the merits of this argument, regardless of the error preservation issue.

child bond consideration in paragraph three does not preclude the termination of parental rights.

Having considered the parents' arguments, we affirm the juvenile court's termination of the mother and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**